# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| KEVIN HILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. S21C-01-022 MHC |
| | ) | |
| SEDGWICK CLAIMS | ) | |
| MANAGEMENT SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## ORDER

Submitted: November 4, 2022
Decided: January 4, 2023

*Upon Plaintiff's Motion to Compel,*
**DENIED.**

John S. Spadaro, Esquire, John Sheehan Spadaro, LLC, Wilmington, Delaware. *Attorney for Plaintiff.*

Aimee M. Czachorowski, Esquire, Lewis Brisbois Bisgaard & Smith, LLP, Wilmington, Delaware. *Attorney for Defendant.*

Lee J. Janiczek, Esquire, Lewis Brisbois Bisgaard & Smith, LLP, Wayne, Pennsylvania. *Pro Hac Vice Attorney for Defendant.*

**CONNER, J.**

## INTRODUCTION

This is the Court's decision on Kevin Hiller's ("Plaintiff") Motion to Compel the IME/DME reports prepared by Dr. Andrew Gelman that are in Sedgwick Claims Management Services, Inc's ("Defendant") possession.[1] For the reasons set forth below Plaintiff's Motion to Compel is **DENIED.**

## FACTUAL AND PROCEDURAL BACKGROUND

On November 11, 2013 Plaintiff injured his right knee in a work-related accident.[2] Workers' Compensation paid for his injuries through periodic payments of benefits.[3] These benefits included payment for two knee surgeries that occurred in April of 2014 and May of 2016.[4] Plaintiff was employed by YRC Inc. but Defendant was the third-party insurance claims adjuster that oversaw the daily management of Plaintiff's claims.[5]

Defendant has paid the covered lost wage benefits and medical expenses that have arisen from the November 11, 2013 work-place accident.[6] Plaintiff alleges

---

[1] Plaintiff is seeking production of all Dr. Gelman IME/DME reports from June 2017 to present day, including reports regarding unrelated claims and people.
[2] Pl. Compl. ¶ 5.
[3] *Id.*
[4] *Id.*
[5] *Id.* ¶ 4.
[6] *Id.* ¶ 7.

1

Defendant failed to timely pay for right knee replacement surgery and the associated total disability benefits even though the surgery should have been covered.[7]

On February 19, 2019 Plaintiff filed a Petition to Determine Additional Compensation Due to Injured Employee with the Delaware Industrial Accident Board ("IAB").[8] The petition sought compensation for the knee replacement surgery and associated total disability costs.[9] Defendant hired Dr. Andrew Gelman to evaluate Plaintiff and offer expert testimony at the June 25, 2019 IAB hearing.[10]

Plaintiff alleges that at the time Defendant hired Dr. Gelman Defendant was aware that the doctor offered predictable, pro-insurer opinions.[11] Plaintiff further alleges that Defendant intended to rely on these "tainted" opinions to deny Plaintiff coverage for his knee replacement surgery.[12]

Dr. Gelman testified before the IAB and stated that Plaintiff's knee replacement surgery was not casually related to his November 11, 2013 workplace accident.[13] To support his opinion, Dr. Gelman stated that Plaintiff's May 2016 surgery was also not related to the workplace accident.[14] However, Plaintiff was

---

[7] *Id.*
[8] *Id.* ¶ 9.
[9] *Id.*
[10] *Id.* ¶ 10.
[11] *Id.* ¶ 17.
[12] *Id.*
[13] *Id.* ¶ 18.
[14] Dr. Gelman was also hired by Defendant to conduct a DME on Plaintiff regarding his 2016 knee surgery. *Id*.

troubled by that testimony considering he already received payments for the May 2016 surgery, meaning the surgery was approved and covered.[15] The IAB issued a written decision in which they rejected Dr. Gelman's opinions.[16] The IAB felt Dr. Gelman offered no explanation for the damage that occurred to Plaintiff's knee independent of the workplace accident.[17]

In Plaintiff's Complaint he puts forth two counts for recovery.[18] Count I alleges a bad faith breach of contract.[19] Plaintiff states Defendant's failure to make timely payments of his workers' compensation benefits for the planned knee replacement surgery was without reasonable justification.[20] Count II alleges civil conspiracy.[21] Plaintiff states Defendant acted in concert with one or more other actors to unreasonably delay the payment of workers' compensation benefits.[22] By doing so, Defendant and the other actors have acted in furtherance of a conspiracy.[23] Overall, Plaintiff is alleging that Defendant purposefully hired Dr. Gelman for his supposed "anti-claimant" testimony in order to avoid paying Plaintiff his workers' compensation benefits.

---

[15] *Id.*
[16] *Id.* ¶ 19.
[17] *Id.* ¶ 20.
[18] *Id*. at 15-16.
[19] *Id.* at 15.
[20] *Id.* ¶ 23.
[21] *Id.* at 16.
[22] *Id.* ¶ 27.
[23] *Id.*

Plaintiff filed this Motion to Compel production of all Dr. Gelman's IME/DME reports in Defendant's possession on September 26, 2022. Defendant filed its response on October 28, 2022. Oral argument was heard on the matter on November 4, 2022.

## STANDARD OF REVIEW

When addressing a motion to compel discovery, the Court determines whether the discovery sought is reasonably calculated to lead to admissible, non-privileged evidence.[24] The scope of permissible discovery is broad, and objections to discovery requests are generally not allowed.[25] However, it is the duty of the Court "to confine the scope of discovery to those matters that are truly relevant and to prevent discovery from evolving into a fishing expedition or from furthering purposes ulterior to the litigation."[26] Additionally, the scope of document discovery must be limited to only the production of documents relevant to the subject matter that is being litigated between the parties.[27]

---

[24] Del. Super. Ct. Civ. R. 26(b)(1); *Alberta Sec. Comm. V. Ryckman*, 2015 WL 2265473, at *9 (Del. Super. May 5, 2015).

[25] *Hunter v. Bogia*, 2015 WL 5050648, at *2 (Del. Super. July 29, 2015).

[26] *Omnicare, Inc. v. Mariner Health Care Mgmt. Co.*, 2009 WL 1515609, at *3 (Del. Ch. May 29, 2009) (quoting *Plaza Sec. Co. v. Office,* 1986 WL 14412, at *5 (Del. Ch. Dec. 15, 1986)).

[27] *Id.* (citing *Frank v. Engle*, 1998 WL 155553, at *1 (Del. Ch. Mar. 30, 1998)).

**DISCUSSION**

In seeking the production of Dr. Gelman's IME/DME reports in Defendant's possession, Plaintiff relies on *Powell v. Amguard Ins. Co.*[28] to establish that the reports are discoverable. Plaintiff posits that *Powell* is identical to the case at hand, and therefore Plaintiff is entitled to the reports.

In *Powell*, the Plaintiff, Krieger, suffered a work-related accident.[29] Krieger's employer was insured by AmGuard who provided workers' compensation benefits.[30] Krieger alleged that AmGuard unjustifiably delayed paying him his benefits after his injury, therefore breaching the insurance contract in bad faith.[31] Krieger's workplace injury occurred on May 22, 2017.[32] On June 5, 2017 AmGuard received the claim for benefits.[33] On that same day, AmGuard informed Kreiger that it could not accept or deny his claim yet due to a lack of medical documentation, however AmGuard hoped to have the claim investigation completed within 30 days.[34] Krieger received an MRI for his injuries on June 12, 2017.[35] AmGuard acquired the MRI report on July 7, 2017 and also acquired Kreiger's emergency room records.[36]

---

[28] 2019 WL 2114083 (Del. Super. May 14, 2019).
[29] *Id.* at *1.
[30] *Id.*
[31] *Id.*
[32] *Powell v. AmGuard Ins. Co.,* 2020 WL 996734, at *1 (Del. Super. Mar. 2, 2020).
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*

Despite having those documents in its possession, AmGuard did not accept Kreiger's claim.[37] Instead, AmGuard delayed its decision because of alleged "red flags" regarding Kreiger's possible drug use and theft at his place of employment.[38] AmGuard took no action to investigate these alleged "red flags" and had still not paid any benefits as of August 8, 2017.[39] On that same day, AmGuard informed Kreiger's attorney it would continue to withhold his benefits due to another allegation, this being that Kreiger did not have permission to operate the forklift that injured him.[40] It wasn't until late August when AmGuard finally investigated the "red flag" allegations. AmGuard determined Kreiger's employer falsely alleged that Kreiger attempted to steal and impermissibly used the forklift.[41]

Payments were delayed for an additional month after the allegations were proven untrue because AmGuard continued to contest the severity of Kreiger's injury.[42] It wasn't until October 2, 2017 that the parties settled the lost wage issue.[43] Kreiger had received no payments for four months and no explanation for this delay, even though AmGuard was obligated by statute to provide written explanation for the

---

[37] *Id.*
[38] *Id.*
[39] *Id.* at *2.
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*

delay of benefits.[44] After finally issuing the first benefits check on October 2, 2017

AmGuard then continued to pay Krieger until he passed away in 2018.[45] Prior to his

death, Krieger had initiated a lawsuit against AmGuard for bad faith delay in

investigation and payment of his claim.[46]

Relevant to the case at hand is AmGuard sending Krieger to Dr. Robert Smith for

a DME on August 29, 2017.[47] Dr. Smith prepared a report stating Krieger's injuries

were directly related to his workplace injury.[48] Krieger's estate requested AmGuard

produce all of Dr. Smith's DME reports in its possession from the three years prior

to Krieger's claim.[49] The Commissioner allowed the discovery and AmGuard

appealed to this Court.[50] The Superior Court denied AmGuard's motion for

reconsideration of the decision.[51]

The Court first notes that the case at hand is not identical to the facts of *Powell.*

In *Powell*, AmGuard delayed payment for months because of a failure to investigate

unsubstantiated allegations of wrongdoing on the part of Kreiger. AmGuard clearly

acted in bad faith when it delayed payment by relying on these unsubstantiated

---

[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] Krieger was sent to Dr. Smith after AmGuard initiated its investigation into Krieger's claim.
*Powell*, 2019 WL 2114083, at *1.
[48] *Id.*
[49] *Id.*
[50] *Id.* at *2.
[51] *Id.* at *7.

7

allegations, taking months to investigate, and even after learning the allegations were untrue, continuing to contest the severity of Krieger's injuries by sending him to Dr. Smith. Therefore, the requested DME reports were relevant to the allegations of bad faith against AmGuard. However, in this case there is no evidence that Defendant acted in bad faith, of any manner, when sending Plaintiff to Dr. Gelman and delaying the payment pending Dr. Gelman's examination. Defendant did not wait months to investigate the claim nor rely on unsubstantiated allegations of wrongdoing to delay payment. Defendant decided, as permitted, to investigate the validity of Plaintiff's benefits claim by sending him to a doctor for a DME before ultimately making payments.

Furthermore, Plaintiff advanced in his Motion to Compel and at oral argument that a finding of no explanation by Dr. Gelman is effectively a finding of bad faith.[52] But, Plaintiff was unable to provide any case law that stated a finding of no explanation was equivalent to a finding of bad faith, rendering that argument meritless.

Although Plaintiff has cited numerous cases where the IAB disagreed with Dr. Gelman's testimony, Plaintiff was unable to provide any evidence that Dr. Gelman has ever been subject to disciplinary action for his supposed "anti-claimant"

---

[52] Pl. Mot. to Compel ¶ 5.

testimony. Additionally, Plaintiff has been unable to provide any evidence that Defendant purposefully selected Dr. Gelman for his "pro-insurer" testimony which would help it delay and/or deny Plaintiff's claim. Despite Dr. Gelman's testimonial history with the IAB, it is not unreasonable that Defendant hired him to conduct the DME for Plaintiff's knee replacement surgery. Dr. Gelman was previously hired by Defendant to conduct another DME on Plaintiff prior to his 2016 knee surgery. Since Dr. Gelman previously examined Plaintiff, and is familiar with his injury, it is reasonable Defendant used the same doctor.

Moreover, allowing the discovery of the Dr. Gelman reports in Defendant's possession opens the door for similar discovery requests occurring in every case in which Dr. Gelman testifies. Permitting this discovery of the IME/DME reports when there is a significant lack of evidentiary support for Plaintiff's claims would set the stage for discovery evolving into fishing expeditions in workers' compensation disputes.

The Court must limit the scope of discovery to matters that are truly relevant. Plaintiff relied heavily on *Powell* to show that the reports should be discoverable. However, *Powell* is easily distinguishable from the facts at hand. At this time, the lack of evidence regarding Defendant's supposed bad faith conduct leaves the Court with nothing to base the allowance of the discovery of the IME/DME reports in

Defendant's possession. Simply, the reports are not relevant to the subject matter of the litigation between the parties nor will the reports lead to admissible evidence.

## CONCLUSION

Although the scope of discovery is broad, Defendant has met its' burden establishing that the desired information is improperly requested. For the reasons stated above, Plaintiff's Motion to Compel is **DENIED**.

**IT IS SO ORDERED.**

*/s/Mark H. Conner*

Mark H. Conner, Judge

cc: Prothonotary

10